BILL HUNTER v. STATE.

No. A-9267.   Oct. 1, 1937.
(72 P. 2d 399.)

John W. Tillman and Fred A. Tillman, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, J.   This appeal is from a judgment of conviction rendered on the verdict of a jury finding the defendant, Bill Hunter, guilty of leaving the scene of an accident without giving information, leaving the penalty to be fixed by the court.

Motions in arrest of judgment and for a new trial were duly filed and were by the court overruled.   Thereupon the defendant was sentenced to pay a fine of $50 and the costs.

The information charges that on the 30th day of November, 1935, in Osage county:

"The defendants, Ruby Buffalohide Warrior and Bill Hunter, then and there being, did then and there wrongfully and unlawfully drive and operate a certain automobile, to wit: a 1935 model Ford V8 coupe, over and upon Main street, Prudom avenue, 7th street in the city of Pawhuska, Okla., and upon Highway No. 11, and while said defendants were so engaged in driving said automobile as aforesaid, and at a point on Main street in the city of Pawhuska, Okla., in the 100 block of said street said car which was at the time being driven by the defendant Ruby Buffalohide Warrior, ran into and over and collided with Mrs. Fannie Leahy, and said automobile so driven as aforesaid failed to stop and continued on to Prudom avenue in the city of Pawhuska where said occupants of the car aforementioned changed positions in said car and Bill Hunter took over the control and operation of said machine and continued on 7th street and on to Highway No. 11, and that the said defendants, Ruby Buffalohide Warrior and Bill Hunter did then and there and immediately thereafter said collision, knowingly, wrongfully and unlawfully refuse to stop and furnish such information as is required by law under section 10329, Okla. Stats. 1931 [47 Okla. St. Ann. § 104] contrary to," etc.

The statute on which the information is founded, section 10329, St. 1931 (47 Okla. St. Ann. § 104), reads as follows:

"Whenever an automobile, motorcycle, or other motor vehicle whatsoever, regardless of the power by which the same may be propelled, or drawn, strikes any person or collides with any vehicle containing a person, the driver of, and all persons in control of such automobile, motor vehicle or other vehicle shall stop and such driver and person having or assuming authority of such driver shall further give to the occupant of such vehicle or person struck, if requested at the time of such striking or collision or immediately thereafter, the number of such automobile, motorcycle or motor vehicle, also the name of the owner thereof and his address, the names of the passenger or passengers not exceeding five in each automobile or

other vehicle, together with the address of each one thereof."

Section 10330, St. 1931 (47 Okla. St. Ann. § 105) reads:

"Any person violating any provision of this Act is punishable by imprisonment in jail not exceeding one year, or by fine not exceeding five hundred dollars, or by both such fine and imprisonment."

The record shows when the case was called for trial on December 10, 1936, the defendant by leave of court interposed a demurrer to the information on the statutory grounds, which was by the court overruled, exception reserved. Then the defendant filed a motion to dismiss on the grounds that:

"Ruby Buffalohide Warrior has plead guilty to the identical and same crime now charged against this defendant.

"That this defendant has further been a witness for the state in the case of State of Oklahoma v. Ruby Buffalohide Warrior in the district court of Osage county in which Ruby Buffalohide Warrior was charged with murder and was convicted of the crime of manslaughter; that said case in the district court was based upon the same collision, facts and circumstances in this case. That said defendant, Hunter was induced to believe if he so testified for the state he would be granted immunity and in pursuance thereto did testify for the state."

Which motion was overruled.

The following facts are undisputed or fairly shown by the evidence:

On November 30, 1935, between 7 and 8 o'clock in the evening, Mrs. Fannie Leahy, an elderly lady, crossing Main street at the bus station in the city of Pawhuska, was struck, knocked down and run over by a Ford V8

coupe. Ruby Buffalohide Warrior was driving the car, the defendant Hunter sitting by her side. The car continued on; after going two or three blocks the defendants changed seats; the defendant Hunter took the wheel and drove on out of the city, to the town of Nelagony and other points in the country. The defendant Hunter was apprehended early the next morning.

Layton Mitchell, chief of police, testified that the accident occurred between 7 and 8 o'clock in the evening; that the next morning the defendant in his office made a voluntary statement which was reduced to writing and signed by the defendant; that he read it to him, and the defendant read it also before he signed the same.

The statement reads:

"I, Bill Hunter, have been advised of my constitutional rights and do hereby make the following statements on my own free will. I was with Ruby Warrior in a Ford V8 coupe in the city of Pawhuska on Main street, when said car struck a lady down in front of bus station and both wheels ran over her body.

"I asked Ruby Warrior to stop the car. She never replied, only said, 'Oh, my God,' and drove on down Main street to Prudom, turned north on Prudom and went to the middle of the block and stopped. I asked her to let me drive the car, we changed sides and Ruby asked me to drive her out to the farm, which is out north of Nelagony; while we were at the farm Homer Buffalohide and Louise Buffalohide drove out and told us the officers were looking for us. We all four then went to Bartlesville—I was riding with Homer in Ruby's car, and Louise and Ruby rode in Homer's car. Coming back from Bartlesville the lights on our car went out and we left it out on the Bartlesville road about 3 miles. question Was Ruby drunk when she hit the lady and run over her? Answer—Yes, she was pretty tight.

"[Signed] Bill Hunter

"Witnesses Geo. Leoanard L. O. Maze O. W. Henson Hary Long L. L. McCartney R. H. Kelsey

"Statement taken by Layton Mitchell Dec. 1—1935 325 AM."

At the close of the state's evidence, there was a motion for a directed verdict of acquittal in the form of a demurrer to the evidence, which was overruled. Exception reserved.

As a witness in his own behalf, Bill Hunter testified that Ruby was driving the car at the time the accident occurred; that he was sitting on the right-hand side of the seat in the car; that after the car hit Mrs. Leahy the wheels bounced as it rolled over the body, and then Ruby just put it in second and he told her to stop, she did not, but said, "Oh, my God." After going two or three blocks, he asked her to let him drive, and she said, "All right"; that he took the wheel, and drove down to the town of Nelagony; that after his arrest he made a full, free, and voluntary statement of all that happened when asked about it by the officers, which statement was reduced to writing by Mr. Mitchell and signed by him in the presence of several witnesses.

He further testified as follows:

"Q. Now, Bill, I will ask you if you were told by any person representing you in a representing capacity that if you give that testimony in the district court you would not be prosecuted yourself for any offense? A. Well, just Mr. Comstock. Q. Do you know to whom he had talked? A. Mr. Sim Carman. Q. You talked to Mr. Carman yourself? A. Yes, sir. Q. Now, Bill, is that the reason you gave your testimony against Ruby Buffalohide Warrior? A. Yes, sir. Q. You have at all times assisted the state in the investigation and prosecution of Ruby Buffalohide? A. Yes, sir."

On cross-examination he stated that he had been driving with Ruby all that afternoon, and that four of them had drunk about three pints of whisky; that after leaving Nelagony he drove back to Pawhuska and stopped three or four blocks from the bus station; that they met Homer Buffalohide and his wife, and, after talking with them, they all drove to their home and from there he went to Bartlesville.

Asked if he did not make the statement in answer to the question, "After the accident when you took the wheel of the car why didn't you come back?" he said, "I don't know," he answered, "Yes."

At the close of all the evidence counsel for the defendant renewed his demurrer to the evidence and moved the court to instruct the jury to return a verdict of not guilty on the ground "that the evidence is wholly insufficient as a matter of law to permit the case to go to the jury."

The demurrer and motion were overruled. Exceptions reserved.

The noticeable assignments of error are confined to four points.

The first is the overruling of the demurrer to the information.

The information charges specifically by a detail of the essential facts constituting the offense.

An information, though joint in form, is regarded as a several charge against each defendant, where it charges an offense which may be committed by one person alone.

The court committed no error in overruling the demurrer on the ground that more than one offense is charged in the information.

The second point is that the court erred in overruling the defendant's motion to dismiss the cause on the ground that he testified as a witness for the state in the case of the State v. Ruby Buffalohide Warrior, wherein his co-defendant was convicted of the crime of manslaughter in the district court of Osage county, and that he was induced to believe that if he so testified he would be granted immunity.

It is sufficient to say that there is nothing in the record before us tending to show that defendant was not a voluntary witness for the state on the trial of his co-defendant in said district court.

Before any person can secure immunity under section 27, art. 2, of the Constitution, " 'on account of incriminatory evidence, given by him as a witness' for the state 'such witness must have testified under an agreement made with the prosecuting attorney, approved by the court, or such witness must have claimed the privilege of silence, which was by the court denied, and such witness must have been compelled by the court to so testify.' " Rudolph v. State, 32 Okla. Cr. 265, 240 Pac. 761, 763.

In this connection it is also asserted that the trial court had no jurisdiction to try this defendant.

The evidence shows that both of the defendants were under the influence of intoxicating liquor at the time of the events about which the defendant testified, in violation of section 10324, St. 1931 (47 Okla. St. Ann. § 93), making the driving of a motor vehicle on any highway within the state by a person under the influence of intoxicating liquor a felony.

The rule is well settled that evidence is admissible that tends directly to prove the defendant guilty, although it

may also tend to prove a distinct felony and thus prejudice the accused. In support of this rule see Bouyer v. State, 57 Okla. Cr. 22, 43 Pac. 2d 153, 154. In the Bouyer Case the prosecution was founded on section 10329, supra (47 Okla. St. Ann. § 104). In syllabus 4 and 5 this court held:

"Evidence is admissible that tends to prove the defendant guilty of the offense charged, even though it may tend to prove a different offense, when both offenses are so closely related or connected as to form a part of the res gestae."

"Evidence which is relevant to the issue is not rendered inadmissible by reason of the fact that it tends to prove the defendant guilty of an offense other than the one charged in the information."

The third ground upon which error is assigned is that the verdict of the jury is contrary to both the law and the evidence, and that the court erred in refusing to grant the motion to direct a verdict of not guilty.

In our opinion, a clear case is made out against this defendant. According to his own statements and the physical facts, he is guilty as charged, and, if it be possible to make out a case of aiding and assisting in the commission of an offense, it must be admitted that it has been done in this case, as to this defendant. The evidence not only shows both defendants guilty, but demonstrates that this defendant knew at the time that he was violating the law.

Finally, it is contended that the court erred in refusing to give a certain requested instruction and erred in the instructions given, all over the objection and exception of the defendant.

We have examined the instruction refused and the instructions given to which no objection was made or ex-

ception taken, except, after the instructions had been given, counsel for the defendant stated: "We desire at this time to take exceptions to each and every instruction of the court." The court gave the jury full and fair instructions. There was no error.

It appears that the defendant had a fair trial. His guilt was established beyond a reasonable question, and no sufficient cause is shown for interference with the verdict. The judgment of the lower court is therefore affirmed.

DAVENPORT, P. J., and BAREFOOT, J., concur.